[Crim. No. 519. Fifth Dist. Jan. 7, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. ROBERT FRANK VINSON, Defendant and Appellant.

James V. Gregory, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Doris H. Maier, Assistant Attorney General, Arnold O. Overoye and Michael H. Fabian, Deputy Attorneys General, for Plaintiff and Respondent.

GARGANO, J.—Appellant was convicted of pimping in violation of Penal Code section 266, subvibision (h), and statutory rape in violation of Penal Code section 261.1. His only contention for reversal is that the prior testimony of the prosecution's chief witness was admitted at his trial for the truth of the matters asserted, in derogation of his right of confrontation as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution.

The chronology of events is substantially as follows. The prosecution's chief witness, Olia Andria Green, became 16 on January 12, 1966; she commenced going out with appellant in October of that year. Around November of 1966 Miss Green discovered that she was pregnant. Later appellant told her he would marry her; he also told the witness' grandmother, "Well, grandmother, if she is pregnant it is mine." However, in March or April of 1967 Miss Green learned that appellant had married another girl. A few months later Miss Green called the police and, according to Officer Earl Powers of the Fresno Police Department, said that she wanted to turn in her pimp.

At appellant's trial Miss Green admitted that appellant knew that she was only 16 years of age when he was going out with her. At the time Miss Green was in high school and she told appellant her age. She denied, however, that she ever had sexual intercourse with appellant. She said she was a prostitute before she met appellant, and when appellant asked her to be a prostitute for him she refused. She testified that when she heard appellant had married another girl it upset her and so she filed the complaint against him. The witness did not recall telling the police that she wanted to turn in her pimp

but remembered only telling them, "I want to make a case against Mr. Vinson."

At the conclusion of Miss Green's direct examination the prosecutor, pursuant to section 1235 of the Evidence Code, read excerpts to the jury from the witness' prior testimony taken at appellant's preliminary hearing. The witness had stated that she had sexual intercourse with appellant on more than one occasion, that she had worked for him as a prostitute, and that she had given appellant money.

Section 1235 of the Evidence Code abrogates the former law of this state and establishes a new exception to the hearsay rule. It provides that inconsistent statements used to impeach a witness are also admissible as substantive evidence for the truth of the matters previously asserted by the witness. However, albeit the section was in effect at the time of appellant's trial, he nevertheless relies on the recent case of *People* v. *Johnson,* 68 Cal.2d 646 [68 Cal.Rptr. 599, 441 P.2d 111], and asserts that it was prejudicial error for the court to admit Miss Green's prior testimony into evidence without limiting its purpose to the impeachment of the witness. In that landmark decision our Supreme Court declared section 1235 unconstitutional to the extent that it impinges on a defendant's Sixth Amendment right of confrontation.

 We note at the outset that Miss Green's testimony was received without objection from appellant's trial counsel as to its hearsay character and without comment from the trial judge either at the time it was received or later when the court instructed the jury; appellant's trial counsel did not request an instruction limiting Miss Green's testimony to impeachment purposes only. Thus, a preliminary question is whether appellant's failure to object to Miss Green's prior testimony or to request a limiting instruction has foreclosed appellant from raising the *Johnson* question in this appeal.[1] It is of course normally the rule that when evidence is admissible for a limited purpose, the defendant must request a limiting instruction; otherwise, the evidence is admissible for all purposes (*People* v. *White,* 50 Cal.2d 428, 430 [325 P.2d 985]).

We conclude that the answer to this preliminary question

[1]Significantly, in *People* v. *Johnson, supra,* 68 Cal.2d 646, the trial court, over defendant's objection, instructed the jury to consider certain prior inconsistent testimony and certain out-of-court inconsistent statements which were offered to impeach the People's witnesses "in the same light and in accordance with the same rules which you have been given as to testimony of witnesses who have testified here in court." In the instant case there was no analogous instruction.

is in the negative since it is absolutely clear that Miss Green's prior testimony was not merely used by the prosecutor to impeach the witness under Evidence Code section 785 but was used as an essential part of his case in chief. In fact, without this testimony there was no substantial evidence to justify defendant's conviction on count I, and it is extremely doubtful that the jury would have found him guilty of count II. In other words, albeit it was absolutely clear that the excerpts from Miss Green's prior testimony were not only used by respondent to impeach the witness but as substantive evidence to prove the crimes charged, appellant's trial counsel understandably did not request a limiting instruction because neither he nor the trial judge had any way of knowing that the California Supreme Court was about to narrow the scope of Evidence Code section 1235 in criminal cases in order to conform the section to constitutional limitations. Thus, appellant should not be deemed to have waived a substantial constitutional right by his counsel's failure to perform what then appeared to be a fruitless or idle act (*People* v. *Kitchens,* 46 Cal.2d 260, 262-263 [294 P.2d 17]; *People* v. *Marsden,* 234 Cal.App.2d 796, 800 [44 Cal.Rptr. 728]). In short, while it is normally the rule that when evidence is admissible for a limited purpose, the defendant must request a limiting instruction or the evidence is admissible for all purposes, this rule is inapplicable to the limited facts of this case. As our Supreme Court said in *People* v. *Kitchens, supra,* 46 Cal.2d 260, 263: "A contrary holding would place an unreasonable burden on defendants to anticipate unforeseen changes in the law and encourage fruitless objections in other situations where defendants might hope that an established rule of evidence would be changed on appeal."

The crucial question, therefore, is whether the admission of Miss Green's prior testimony, without limiting it to impeachment, violated appellant's Sixth Amendment right to confront the witness under the *Johnson* rationale. Significantly, in that case the prior testimony was taken at a grand jury hearing, and the defendant did not have the opportunity to cross-examine the witness when the testimony was given. Moreover, inconsistent out-of-court statements of the witnesses were also used as substantive evidence. In the instant case the prior testimony was given at appellant's preliminary hearing when he was represented by counsel who had the opportunity to cross-examine the witness.

After careful consideration of this most significant ques-

tion, we conclude that Miss Green's prior testimony falls within the ambit of the *Johnson* decision and that without a limiting instruction was undoubtedly considered by the jury for all purposes, contrary to the mandate of that decision.[2] In short, albeit the main thrust of the Supreme Court's decision in *Johnson* was directed against prior testimony adduced at hearings at which the defendant had no opportunity to cross-examine the witness, as respondent maintains, it is nevertheless clear that when the Supreme Court held that such testimony was inadmissible for the truth of the matters asserted therein, it also had in mind the preservation of effective cross-examination "against *all* encroachments, however innocuous they may seem to be on their face." (Italics added.) Moreover, the United States Supreme Court has charted a course unequivocally committed to safeguarding the right of cross-examination "against any corrosive extension of the hearsay rule. Manifestly, the use of testimony taken at a defendant's preliminary hearing as substantive evidence, when the witness is in court and able to testify, is a corrosive extension of the rule even though the defendant was represented by counsel and had the opportunity to cross-examine the witness when the testimony was given.

First, the cross-examination of a witness at a defendant's preliminary hearing is seldom adequate. The cross-examiner does not have the same motivation to cross-examine a witness at a preliminary hearing when the prosecution's only burden is to establish probable cause, as he later has at the defendant's trial when the People must prove the defendant guilty beyond a reasonable doubt. Thus, the cross-examination is seldom a searching exploration into the witness' motives or other facets of his testimony to test his credibility. In fact, experienced trial lawyers often defer cross-examination entirely until the time of trial when it is most effective.[3]

Second, the use of prior testimony as substantive evidence when the witness is in court and able to testify opens the door

[2]Respondent's argument that we cannot presume that the jury considered Miss Green's testimony as substantive evidence because the trial judge did not give the jury an instruction that they were to so consider it and because he gave the standard instruction which informs the jury how to judge the credibility of a witness and which includes a reference to inconsistent statements, is untenable and no further discussion is necessary.

[3]See Justice Mosk's excellent discussion of the importance of cross-examination at the time of trial in *People* v. *Johnson,* 68 Cal.2d pp. 654-655.

to trial tactics which are not only corrosive of the Sixth Amendment right of confrontation but are contrary to the very spirit of fair play, the fundamental concept upon which our entire judicial system has been built. It makes it possible for the prosecutor to call a witness to testify, knowing that the witness has changed his testimony and then, under the guise of impeachment, to use his unreliable testimony as substantive evidence against a helpless defendant who would never have called the witness in the first place. It is one thing to use prior testimony or out-of-court declarations under well formulated hearsay exceptions when the witness is dead, incompetent or out of the jurisdiction. It is an entirely different matter to use such testimony as substantive evidence when the witness is in court and able to testify before the very forum that is going to pass judgment on a defendant who is on trial for his life or freedom. In the former situation, the hearsay is reasonably reliable and is presumably presented to the jury in good faith since it is the only evidence available. In the latter situation the hearsay is no longer reliable, and it is not the only evidence available.

Third, the United States Supreme Court has already taken cognizance of the subtle but real distinction between the admissibility of prior testimony taken at a preliminary hearing when the witness is dead or unavailable through no fault of the prosecution and the admissibility of such evidence when the witness' absence is due to the negligence or omission of the People. In the latter situation, the prior testimony has been held inadmissible even though a defendant was represented by counsel and had the opportunity to cross-examine when it was given (*Motes* v. *United States,* 178 U.S. 458 [44 L.Ed. 1150, 20 S.Ct. 993, 998-999] ; *Barber* v. *Page* (1968) 390 U.S. 719 [20 L.Ed. 255, 88 S.Ct. 1318]. There is no reason to believe that the attitude of the high court would be any different in a case such as this, where the witness is present in court, simply because the prior testimony is first offered under the guise of impeachment. On the contrary, as Justice Mosk observed in *People v. Johnson, supra,* 68 Cal.2d 646, 659-660 : ''And here again the 'former testimony' cases are instructive : even when that testimony was taken at a hearing in which the defendant had a complete and adequate opportunity to cross-examine with the assistance of counsel, the court has held that its introduction at a subsequent trial violates the constitutional right of confrontation if the witness' absence was due to the negligence of the prosecution in allowing his

escape (*Motes* v. *United States* (1900) 178 U.S. 458, 471-474 [44 L.Ed. 1150, 20 S.Ct 993]) or its failure to make a good faith effort to compel his attendance by various procedural means (*Barber* v. *Page* (1968) 390 U.S. 719 [20 L.Ed.2d 255, 88 S.Ct. 1318]). In the latter decision the court observed (at p. 725 of 390 U.S. [20 L.Ed.2d at p. 260]) that 'The right of confrontation may not be dispensed with so lightly.' These rulings emphasize the high court's belief in the importance of ensuring the defendant's right to conduct his cross-examination before a *contemporaneous* trier of fact, i.e., before the same trier who sits in judgment on the truth of the witness' direct testimony as it is spoken from the stand. (See also *Bruton* v. *United States* (1968) 391 U.S. 123 [20 L.Ed.2d 476, 88 S.Ct. 1620].)''

Respondent contends that if error occurred it was harmless and does not require reversal of the judgment. However, the error was ''of federal constitutional dimensions.'' (*People* v. *Johnson, supra,* 68 Cal.2d 646, 660.) And respondent has failed to prove that it was ''harmless beyond a reasonable doubt.'' (*Chapman* v. *California,* 386 U.S. 18, 24 [17 L.Ed.2d 705, 711, 87 S.C.t. 842, 828].) On the contrary, as we have indicated, without Miss Green's prior testimony there was little if any substantial evidence to justify appellant's conviction on count I, and the evidence against appellant on count II was highly circumstantial and lacked the convincing quality generally required in a criminal action. Thus, we cannot say that it is clear beyond a reasonable doubt that a different result would not have occurred on this count even if the jury had known that they were to consider Miss Green's previous testimony for impeachment only.

The judgment is reversed.

Stone, J., concurred.

CONLEY, P. J.—I concur in the result, that is to say, the reversal of the judgment of conviction, but do not approve all of the reasoning of the majority opinion.

A petition for a rehearing was denied February 5, 1969, and the opinion was modified to read as printed above. Respondent's petition for a hearing by the Supreme Court was denied March 26, 1969.